Page 1 of 5

FILED
RICHARD W. NAGEL
CLERK OF COURT
20 APR 28 PM12: 51
U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

UNITED STATES DISTRICT COURT

Southern District of Ohio

United States of America

v.

Michael Chan,
        Defendant

Docket No.
1:17cr108

Motion to Modify Conditions of Probation / Supervised Release

Relief Sought

Michael Chan moves this Court to modify Condition 2 of the Special Conditions of Supervision which reads as follows:
"2.) The defendant shall be restricted from using the Internet during his term of supervised release, except that the defendant is granted periodic Internet access for school purposes; however, he shall be subject to computer and Internet monitoring. The defendant has no expectation of privacy regarding computer use or information stored on the computer. He understands and agrees that information gathered by the probation officer may be used against the defendant in subsequent court actions regarding the defendant's computer use and conditions of supervision."

Grounds for Relief

Michael Chan asserts that he is the defendant in this motion. The defendant was sentenced on 15 January 2019 through a plea agreement. The defendant asserts that Condition 2 of the Special Conditions of Supervision (henceforth referred to as "Condition 2") is more restrictive than his attorney, Karen Savir, presented and explained to him. He also asserts that as a first time offender, Condition 2 is not tailored to his history and characteristics as set forth in 18 USC 3553(a)(1). Condition 2 also is a greater deprivation of liberty than is necessary, sweeps too broadly, fails to address public safety factors, and fails to provide a reasonable vehicle for the defendant's rehabilitation and reintegration into society as set forth by the guidelines in 18 USC 3583(d)(2). Condition 2 also raises First Amendment concerns. The facts supporting these claims are set forth in the Supporting Statement/Affidavit. Because of these factors, the Court must seek to more narrowly tailor the defendant's Special Conditions of Supervision.

Dated
April 23, 2020

Signed,

Michael Chan

Page 2 of 5

Docket No: 1:17cr108
Michael Chan

## SUPPORTING STATEMENT/AFFIDAVIT

To the Honorable Judge Susan Dlott:

I was sentenced on 15 Jan 2019 after pleading guilty to a charge of cyberstalking. I do not contest this charge and I take full responsibility for the terrible actions. I cannot fully or truly express the regret and shame for the pain that I have caused. As a result, while incarcerated, I took anger management courses and sought one on one therapy sessions with the Psychology Department at the Metropolitan Correctional Center New York. I also spent my time working as a GED tutor to assist inmates in pursuing their educational goals and I also worked as a Suicide Watch companion to monitor troubled inmates. Since my release, I have also started the mental health treatment as part of my Special Conditions of Supervision through a provider I was referred to by my probation officer.

I am writing and filing this motion because Condition 2, which restricts my internet usage, is overly broad and too restrictive for modern life as well as according to the guidelines set forth in 18 USC 3553(a)(1) and 18 USC 3583(d)(2).

The internet has become a vital tool in modern day-to-day communication, commerce, and transmission of vital information such as news, weather, and governmental data. Condition 2 restricts me from any of these activities. I am unable to send an email to my family, shop online, search for jobs or housing, look at a map, or even visit this Court's own website. Given that my internet and computer usage is already monitored and my media devices are subject to search, I assert that this restriction is clearly a greater deprivation of liberty than is necessary and these activities being restricted do not offer the public any greater safety. Further, when I was presented with and explained my plea agreement, Condition 2 had been less restrictive. When I was presented a modified plea agreement, my attorney explained to me that nothing had changed except the length of the agreed sentence. To date, my attorney at the time, Karen Savir, has yet to give me a copy of my full plea agreement or the modified agreement. I will state that I have only seen the signing page of the modified agreement and nothing else and Ms. Savir refuses to return my letters and phone calls, I had told her I wished to object to the internet restriction's severity and to date, I have yet to hear anything back from her.

Additionally, the nation and the world is facing an extraordinary circumstance with regards to the global COVID-19 pandemic. Being in New York, I am facing stay-at-home orders. The governor also issued an executive order requiring face masks to use public transport and enter stores. Being unable to use the internet, I am faced with being unable to purchase basic necessities and food as I am unable to enter stores to purchase face masks if they are even available. The government is providing information about the pandemic but does so on websites I cannot visit. Essential businesses are the only ones open so I cannot access my money in my savings account as I am not allowed to visit my bank's website. There are signs posted stating that the city is offering food to those in need at certain locations but these locations are listed on a website I am restricted from using. Mental health experts recommend keeping in contact with friends and family

Docket No. 1:17cr108

Page 3 of 5

but I am not allowed to participate in online chat rooms or video conferences. As a result, I have not been able to speak to my brother who is in London and contacts the family using online messaging applications. I have even run into issues complying with other conditions of supervision. The mental health provider I was referred to asked if I had a computer or smartphone to have our sessions through video chats and due to the restriction of Condition 2, I have neither. As a result, not only has Condition 2 deprived me of greater liberties than is necessary but it is also interfering with complying with the condition to participate in mental health treatment thus serving as a barrier to my rehabilitation. As Condition 2 prevents me from getting up-to-date vital news regarding the pandemic and also forces me into the public without a face mask, it also poses a contradiction to 18 USC 3583 (d)(2)'s guideline to factor in the safety of the public. It puts me at risk of infection and also puts the public at risk of my spreading it as I am forced towards greater interaction than recommended.

Furthermore, I am on a political science track. We have a president that often uses Twitter and Facebook as a medium of communication on public policy and global affairs. Condition 2 restricts me from being able to access this information relevant to my educational track and future vocational prospects. If I cannot stay informed on even our own president as a political science major, it is thereby impossible to even attempt to find employment. Additionally, Condition 2 bars me from performing any and all kinds of research or using the internet to communicate with employers or colleagues.

Condition 2 sweeps so broadly that even the most innocuous tasks that modern society takes for granted now is restricted. Refrigerators, televisions, Fitbit watches, modern cars, credit card readers, all of these devices these days come equipped with internet access and capability for function and becomes a danger of inadvertent violation of Condition 2. A car purchased from Tesla, for example, receives its electronic functionality by downloading software wirelessly over the internet network. It is unlikely that the drafters of the guidelines in 18 USC 3583 (d)(2) sought to dictate what sort of brand of car I am allowed to purchase.

Your Honor, I ask that you reconsider Condition 2 and its restrictiveness. I would like to be able to reform, rehabilitate, and reintegrate into our modern society.

Signed,

Michael Chan

## CASES

Packingham v. North Carolina, 137 S. Ct 1730, Feb 27, 2017
"Foreclosing access to social media altogether thus prevents users from engaging in the legitimate exercise of First Amendment rights. Even convicted criminals -- and in some instances especially convicted criminals -- might receive legitimate benefits from these means for access to the world of ideas, particularly if they seek to reform and pursue lawful and rewarding lives."

US v. Weber, 451 F.3d 552, 559 (9th Circuit, 2006)
The government bears the burden of showing that a particular condition of supervised release involves no greater deprivation of liberty than is reasonably necessary to serve the goals of supervised release.

US v. Holm, 326 F.3d 872, 878 (7th Circuit, 2003)
"An undue restriction on internet use renders modern life -- in which, for example, the government strongly encourages taxpayers to file their returns electronically, where more and more commerce is conducted online, and where vast amounts of government information are communicated via website -- exceptionally difficult."

US v. Voelker, 489 F.3d 139, (3rd Circuit, 2006)
"consider the ubiquitous nature of the internet as a medium of information, commerce, and communication as well as the availability of filtering software that could allow internet activity to be monitored and/or restricted."

US v. Sofsky, 287 F.3d 122, (2nd Circuit, 2001) quoting US v White, 244 F.3d 1199, (10th Circuit, 2001)
"prevents use of email, an increasingly widely used form of communication and, as the 10th Circuit noted, prevents other commonplace uses such as "doing any research, getting a weather forecast, or reading a newspaper online."

US v. Hinkel, 837 F.3d 111, (1st Circuit, 2016)
"We find that the last two sentences of Condition 7 in the excerpt above sweep too broadly and, in the case of the last sentence, too ambiguously. The penultimate sentence suffers from the same defect as we have identified in Condition 4 flatly prohibiting (other than in the course of outside employment or classwork) the use of what have now become standard forms of communicating and associating on essentially all subjects."

US v. Malenya, 736 F.3d 554, (DC Circuit, 2013)
"But this alone cannot be enough to justify such a deprivation of liberty. If it were, district courts could impose bans on reading newspapers if a defendant met his victim through the wanted ads, or ban the wearing of eyeglasses if a defendant first saw the victim through corrective lenses. Because the net is so novel, powerful, and protean, it may seem to have a kind of magic. But pen, paper, and literacy once enjoyed all three characteristics, yet we would laugh at criminologists who advocated banning access for prisoners who had served their term."

US v Peterson, No. 18-50184, (9th Circuit, 2019)

"references were made to numerous items which would seemingly fall within the ambit of the condition, but which a reasonable person might be unaware - e.g. refrigerators with Internet connectivity, Fitbit watches, etc. Also for example, all automobiles manufactured after 2008 are required to be equipped with computers that can send digital messages concerning the vehicle's operations through a "controller area network." (see Cohen v. Toyota Motor Corp.)"

US v Albertson, 645 F.3d 191 (3rd Circuit, 2001)

"In a time where the daily necessities of life and work demand not only internet access but internet fluency, sentencing courts need to select the least restrictive alternative for achieving their sentencing purpose."

US v Holena, No. 17-3537, (3rd Circuit, 2018)

"To gauge whether an internet or computer restriction is more restrictive than necessary, we consider three factors: the restriction's length, its coverage, and "the defendant's underlying conduct." Sometimes we also consider a fourth factor: the proportion of the supervised release condition to the total restriction period (including prison)."

"Restrictions must be aimed to deter future crime, protect the public, or rehabilitate. The Court must find facts to review whether the restrictions are informed by conduct and directed towards these goals."

"On this record, the court may not prevent Holena from doing everyday tasks that have migrated to the internet like shopping or searching for jobs or housing. The same is true for his use of websites conveying essential information, like maps, news, traffic, or weather. Absent specific factual findings, we cannot say that forbidding Holena to write a novel or listen to music on his computer makes the public any safer."

US v Burroughs, 613 F.3d 233, (DC Circuit, 2010)

"that an offense is sometimes committed with the help of a computer does not mean that the district court can restrict the Internet access of anyone convicted of that offense."

McIntyre v Ohio Elections Commission, No. 93-986, (Oct 12, 1994)

"The right to speak anonymously is deeply rooted in American political tradition and in First Amendment doctrine."

USA FOREVER

NEW YORK NY 113
24 APR 2020 PM 5 L

Michael Chan
35-35 210th Street
Bayside, NY 11361

Potter Stewart Federal Court
100 E 5th Street  Rm 103
Cincinnati, OH 45202